UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

YUH-RONG F. SHIH,

                Plaintiff,

    - against -                     10 Civ. 9020 (JGK)

JPMORGAN CHASE BANK, N.A.,            <u>MEMORANDUM OPINION
AND ORDER</u>

                Defendant.
————————————————————————

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Yuh-Rong F. Shih, brings this action against the defendant, JPMorgan Chase Bank, N.A. ("Chase"), her former employer.  The plaintiff, proceeding pro se, alleges that Chase retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e <u>et seq.</u> (2006); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 <u>et seq.</u> (2006); Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 <u>et seq.</u> (2006); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 <u>et seq.</u> (McKinney 2010); and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 <u>et seq.</u> (2011).  Chase now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking to dismiss all of the plaintiff's claims.

**I.**

The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790

(2d Cir. 1994))).  In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  Local Civil Rule 56.2; see also McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999).  In this case, Chase complied with Local Civil Rule 56.2 by providing the required notice to the plaintiff.  (See Def.'s R. 56.2 Notice.)

## II.

The following facts are undisputed for the purposes of this motion, unless otherwise indicated.

Chase employed the plaintiff from January 1990 to August 2002.  (Am. Compl. ¶¶ 3, 8.)  At the time of the events in question, the plaintiff was a fifty-year-old Asian woman who suffered from carpel tunnel syndrome.  (Am. Compl. ¶ 22.)  In August 2001, the plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation on the basis of age, national origin, and sex.  (Am. Compl. ¶ 5.)  The plaintiff alleges that Chase denied her claim for workers' compensation benefits in March 2002, although the Workers' Compensation Board ultimately

approved her disability benefits and an insurance carrier
reimbursed Chase for the full amount.  (Am. Compl. ¶¶ 6-7.)

        The plaintiff's employment was terminated on August 16,
2002.  (Am. Compl. ¶ 8; Lieberman Aff. Ex. A.)  On November 1,
2002, the plaintiff filed an amended charge with the EEOC to
include disability discrimination and retaliation charges.  (Am.
Compl. ¶ 9.)  The plaintiff then filed a lawsuit ("the 2002
Lawsuit") against Chase in or around November 2002.  (Am. Compl.
¶ 12; Lieberman Aff. ¶ 4.)  The 2002 Lawsuit asserted claims of
discrimination and retaliation in violation of the same statutes
under which the present lawsuit has been brought.  (Am. Compl.
¶ 12; Lieberman Aff. ¶ 4.)  The plaintiff alleges that she
discovered in April 2003 that Chase had reduced her severance
payment without notice.  (Am. Compl. ¶ 14.)

        In May 2005, the parties verbally agreed to settle the 2002
Lawsuit before trial.  (Lieberman Aff. ¶ 6.)  On or about
September 7, 2005, in connection with the resolution of the 2002
Lawsuit, the plaintiff executed a Negotiated Settlement
Agreement and General Release ("the 2005 Agreement/Release").
(Lieberman Aff. Ex. C ("Agreement/Release").)  The plaintiff
read the entire 2005 Agreement/Release and signed it freely,
under the direction of her attorney.  (Shih Dep. 13, 15, 26-27.)
Pursuant to the 2005 Agreement/Release, Chase agreed to pay the

plaintiff a total of $120,000 "in settlement of any and all
claims [the plaintiff] asserted against [Chase] in this Action
and may have as a result of her employment and/or the
termination thereof." (Agreement/Release ¶ 1.)  In
consideration for the settlement payment, the plaintiff agreed
to release Chase "from all actions, causes of action, suits,
debts, dues, sums of money, accounts, reckonings, bonds, bills,
specialties, covenants, contracts, bonuses, controversies,
agreements, promises, claims, charges, complaints and demands
whatsoever . . . ." (Agreement/Release Ex. A at 1.)  This
general release covered claims arising under a list of statutes,
including all of the anti-discrimination statutes relevant to
this case, and "any claim of retaliation under such
laws . . . ." (Agreement/Release Ex. A at 1.)

The 2005 Agreement/Release also contained a provision ("the
carve-out") which stated that the plaintiff did not waive any
rights to or release Chase from "payments of any and all
benefits and/or monies earned, accrued, vested or otherwise
owing, if any, to [the plaintiff] under the terms of [Chase's]
retirement, savings, deferred compensation and/or profit sharing
plan(s)." (Agreement/Release ¶ 2(c).)  At the time the
plaintiff executed the 2005 Agreement/Release, she believed that

Chase still owed her approximately $3480 in severance pay.
(Shih Dep. 17-20, 61-63.)

On or about May 21, 2007, the plaintiff filed a malpractice
lawsuit against Scott Mishkin ("the Mishkin Lawsuit"), the
attorney who represented her in the 2002 Lawsuit.  (Am. Compl.
¶¶ 18, 27; Lieberman Aff. ¶ 11.)  The plaintiff contended that
Mishkin, by advising her to sign the 2005 Agreement/Release,
caused her to lose her right to collect the allegedly unpaid
severance.  (Shih Dep. 30-31.)  Chase was not named as a party
in the Mishkin Lawsuit, and no third-party claim was ever
brought against Chase.  (Lieberman Aff. ¶ 11.)  Chase did
provide a sworn affidavit to Mishkin's counsel dated July 10,
2007, indicating that Chase did not owe the plaintiff any
additional severance and that Chase actually overpaid her by
$580.  (Lieberman Aff. Ex. E.)

On or about April 1, 2008, the plaintiff and Mishkin's
counsel entered into a Stipulation of Settlement for the Mishkin
Lawsuit (Lieberman Aff. Ex. F), but Chase was not a signatory to
the Stipulation of Settlement and did not give Mishkin's counsel
authority to sign on its behalf (Lieberman Aff. ¶ 17).  On April
18, 2008, although not a party to the Mishkin Lawsuit, Chase
offered to pay the plaintiff $4060.14 as part of the Mishkin
settlement if the plaintiff executed a new release agreement.

7

(Lieberman Aff. Ex. G.)  Because the plaintiff failed to return
a signed release agreement to Chase, Chase did not make any
payment to her.  (Lieberman Aff. ¶ 19.)  On November 26, 2008,
Chase renewed its settlement offer of $4060.14, conditioned upon
the plaintiff's execution of a new release agreement.
(Lieberman Aff. Ex. I.)  Chase explained: "[We] cannot authorize
a payment to you unless you execute a new Release Agreement,
which we need so that we can be certain that there are no more
outstanding claims."  (Lieberman Aff. Ex. I.)  The plaintiff
never returned a signed release agreement to Chase.  (Lieberman
Aff. ¶ 22.)

     On March 27, 2009, the plaintiff filed a charge against
Chase with the EEOC, alleging retaliation on the basis of sex,
national origin, age, and disability.  (Am. Compl. ¶¶ 74, 98;
Knepper Aff. Ex. A.)  The plaintiff and Chase's EEOC Case
Manager Kathryn Knepper attended an EEOC mediation session on
July 17, 2009.  (Knepper Aff. ¶ 4.)  Knepper was authorized to
renew Chase's settlement offer of $4060.14, again conditioned
upon the plaintiff's execution of a new release agreement.
(Knepper Aff. ¶ 3.)  The plaintiff advised that she would not
execute the proffered release agreement.  (Knepper Aff. ¶ 5.)
On September 8, 2010, the EEOC issued a Dismissal and Notice of
Rights, by which the EEOC dismissed the plaintiff's charge for

lack of substantiating information and gave the plaintiff notice of her right to sue.  (Knepper Aff. Ex. B.)

On December 2, 2010, the plaintiff filed the present action against Chase, alleging that Chase retaliated against her in violation of Title VII, the ADEA, the ADA, the NYSHRL, and the NYCHRL.  The plaintiff alleges that Chase took the following "adverse" actions against her: (1) "On or about April 15, 2003, Plaintiff's severance payment was reduced without notice"; (2) "In or around 2002, workers' compensation benefits were denied to Plaintiff"; (3) "On or about July 10, 2007, [Chase's Assistant General Counsel] asked [a Chase Human Resources employee] to issue a false affidavit in connection with the Mishkin Litigation and insisted that the information was correct"; (4) "On or about April 18, 2008, [Chase's Assistant General Counsel] denied that [Chase] ever offered the terms and conditions of settlement that Mishkin's counsel presented in Court in connection with the Mishkin Litigation"; (5) "On or about April 18, 2008, [Chase] refused to set aside the Agreement/Release that Plaintiff executed in September 2005"; (6) "On or about June 12, 2008, [Chase] refused to comply with the terms of the Stipulation of Settlement [from the Mishkin Lawsuit]"; (7) "In or around December 2008, [Chase] refused to investigate [the] conduct [of Chase's Assistant General

Counsel]"; and (8) "On or about July 17, 2009, [Chase] did not send a representative to the EEOC mediation with authority." (Pl.'s R. 56.1 Stmt. ¶ 27.)


### III.

Chase now moves for summary judgment on all of the plaintiff's claims.  Chase first argues that the 2005 Agreement/Release bars the plaintiff's claims concerning Chase's allegedly retaliatory actions taken before September 2005. Chase further argues that the plaintiff's claims should be dismissed because the plaintiff has failed to set forth a prima facie case of retaliation, and even if she had, she has failed to present evidence showing that Chase's proffered non-retaliatory reasons for its actions were merely pretext for retaliation.


### A.

As an initial matter, Chase argues that the plaintiff's claims concerning Chase's allegedly retaliatory actions taken before September 2005 should be dismissed because she broadly released any and all such claims by executing the 2005 Agreement/Release.  These include her claims that Chase reduced her severance payment without notice in or about April 2003 and

that Chase denied her workers' compensation benefits in or around 2002.

The parties dispute whether severance pay is covered by the carve-out that provides an exception to the general release. The plaintiff asserts that severance pay is covered by the carve-out, which provides an exception to the general release for "payments of any and all benefits and/or monies earned, accrued, vested or otherwise owing, if any, to [the plaintiff] under the terms of [Chase's] retirement, savings, deferred compensation and/or profit sharing plan(s)" (Agreement/Release ¶ 2(c)), and thus she has not waived her right to claim any unpaid severance.  On the other hand, Chase contends that severance pay is not covered by the carve-out, and therefore this claim is barred by the 2005 Agreement/Release's broad language releasing Chase "from all actions, causes of action, suits, debts, dues, controversies, agreements, promises, claims, charges, complaints and demands whatsoever." (Agreement/Release Ex. A at 1.)

It is unnecessary to determine whether the 2005 Agreement/Release bars the plaintiff's claims concerning Chase's allegedly retaliatory actions taken before September 2005 because the claims fail as a matter of law in any event.  For the reasons explained below, none of the plaintiff's retaliation

11

claims--whether occurring before or after September 2005--can survive Chase's motion for summary judgment.

### B.

Title VII, the ADEA, the ADA, the NYSHRL, and the NYCHRL contain anti-retaliation provisions that prohibit an employer from retaliating against an employee for opposing discriminatory conduct prohibited by the statutes.  See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); 42 U.S.C. § 12203(a); N.Y. Exec. Law § 296(e); N.Y.C. Admin. Code § 8-107(7).  The Court will first address the retaliation claims under Title VII, the ADEA, the ADA, and the NYSHRL together, and will later address the retaliation claim under the NYCHRL separately.

### 1.

The anti-retaliation provisions in Title VII, the ADEA, the ADA, and the NYSHRL contain nearly identical language and are analyzed under the same framework.  See Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006) (noting that "the same standards and burdens apply to claims under both [Title VII and the ADEA]"); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) (noting that "it is appropriate to apply the framework used in analyzing

retaliation claims under Title VII in analyzing a claim of
retaliation under the ADA"); Sutera v. Schering Corp., 73 F.3d
13, 16 n.2 (2d Cir. 1995) (noting that "[t]he same analysis [as
used for Title VII and ADEA claims] applies to claims under the
New York Human Rights Law").  Retaliation claims are analyzed
under the burden-shifting framework established by the United
States Supreme Court in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973).  See Gorzynski v. Jetblue Airways Corp., 596
F.3d 93, 110 (2d Cir. 2010).

     Under the McDonnell Douglas framework, the plaintiff
carries the initial burden of establishing a prima facie case of
retaliation.  See McDonnell Douglas, 411 U.S. at 802.  "To
establish a prima facie case of retaliation, [the plaintiff]
must show that (1) she was engaged in protected activity;
(2) [the defendant] was aware of that activity; (3) [the
plaintiff] suffered a materially adverse action; and (4) there
was a causal connection between the protected activity and that
adverse action."  Lore v. City of Syracuse, 670 F.3d 127, 157
(2d Cir. 2012) (citations omitted).  If the plaintiff meets this
initial burden, the defendant must point to evidence of a
legitimate, non-retaliatory reason for the challenged action.
See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).
If the defendant meets its burden, then "the plaintiff must

point to evidence that would be sufficient to permit a rational
factfinder to conclude that [the defendant's] explanation is
merely a pretext for impermissible retaliation." Id. (citations
omitted).

Here, the parties do not dispute that the plaintiff has
satisfied the first two elements of a prima facie case of
retaliation.  Chase does not dispute that the plaintiff's filing
of charges with the EEOC in 2001 and 2009, as well as her filing
of the 2002 Lawsuit, constitute protected activity under the
statutes, nor does it dispute that it was aware of that
activity.  However, Chase asserts that the plaintiff has not
satisfied the third and fourth elements of a prima facie case of
retaliation.

With respect to the third element, Chase argues that the
plaintiff has not suffered a materially adverse action.
According to Chase, to establish an adverse action a plaintiff
must show that the challenged action "affected the terms,
privileges, duration, or conditions of the plaintiff's
employment." (Def.'s Mem. Supp. Mot. S.J. at 11 (quoting Cooper
v. N.Y. State Dep't of Human Rights, 986 F. Supp. 825, 828
(S.D.N.Y. 1997)) (emphasis added).)  Chase maintains that
because the plaintiff was not an employee at the time of the

14

challenged actions, none of the challenged actions constitute adverse actions affecting her employment.

However, as the United States Supreme Court has made clear, retaliation extends beyond strictly employment-related and workplace-related actions.  See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006).  Under Burlington Northern, a materially adverse action in the retaliation context is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68 (citation and internal quotation marks omitted).  As the Supreme Court explained, both the language of Title VII's anti-retaliation provision and its protective purpose indicate that retaliation is not limited to discriminatory actions that affect the terms and conditions of employment.  See id. at 62-64.  Thus, any action by an employer that would dissuade a reasonable employee from opposing discriminatory conduct can support a claim of retaliation.  See id. at 67-68; see also Kessler, 461 F.3d at 207.  This may include actions taken outside the context of the plaintiff's employment.  See, e.g., Marchiano v. Berlamino, No. 10 Civ. 7819, 2012 WL 4215767, at *4-5 (S.D.N.Y. Sept. 20, 2012) (holding that an employer suing a former employee for contribution is a materially adverse action for the purposes of a retaliation claim).

Nevertheless, it is unnecessary to decide whether the plaintiff in this case has satisfied the third element of a prima facie case of retaliation, because Chase correctly argues that the plaintiff has not satisfied the fourth element: that there is a causal connection between the protected activity and any of the allegedly adverse actions.  Taking each instance of protected activity and the subsequent actions in turn, there is no evidence that the plaintiff's involvement in protected activity caused Chase to take adverse actions against her.

After the plaintiff filed the 2001 charge with the EEOC, Chase allegedly denied her workers' compensation benefits in 2002.  (Pl.'s R. 56.1 Stmt. ¶ 27.)  However, the Workers' Compensation Board ultimately approved her disability benefits and an insurance carrier reimbursed Chase for the full amount. (Am. Compl. ¶ 7.)  The plaintiff then alleges that, after she filed the 2002 Lawsuit, Chase took several adverse actions against her, spanning from April 2003 to December 2008.  In or about April 2003, Chase allegedly reduced the plaintiff's severance payment without notice.  (Pl.'s R. 56.1 Stmt. ¶ 27.) However, a Chase Human Resources employee later reviewed the plaintiff's employment records and in July 2007 issued a sworn affidavit indicating that Chase did not owe the plaintiff any additional severance and that Chase actually overpaid her by

16

$580.  (Lieberman Aff. Ex. E.)  Nonetheless, the plaintiff
alleges that this affidavit was false and that its issuance
constituted an adverse action in itself.  (Pl.'s R. 56.1 Stmt.
¶ 27.)  In April 2008, Chase allegedly refused to set aside the
2005 Agreement/Release.  (Pl.'s R. 56.1 Stmt. ¶ 27.)  However,
the plaintiff admits that she read the entire 2005
Agreement/Release and signed it freely, under the direction of
her attorney.  (Shih Dep. 13, 15, 26-27.)  In April 2008 Chase
allegedly denied making the settlement offer contained in the
Stipulation of Settlement for the Mishkin Lawsuit, and in June
2008 Chase allegedly refused to comply with its terms.  (Pl.'s
R. 56.1 Stmt. ¶ 27.)  However, Chase was not a signatory to the
Stipulation of Settlement nor gave Mishkin's counsel authority
to sign on its behalf (Lieberman Aff. ¶ 17), and on three
different occasions Chase made a settlement offer of $4060.14 to
the plaintiff that was always conditioned on her execution of a
new release agreement (Lieberman Aff. Ex. G, Ex. I; Knepper Aff.
¶ 3).  The plaintiff further alleges that Chase's refusal to
investigate the conduct of its Assistant General Counsel in or
around December 2008 constituted another adverse action.  (Pl.'s
R. 56.1 Stmt. ¶ 27.)  Then, after the plaintiff filed the 2009
charge with the EEOC, Chase allegedly failed to send a
representative with authority to the EEOC mediation session.

(Pl.'s R. 56.1 Stmt. ¶ 27.)  However, Chase maintains that its representative at the EEOC mediation session was authorized to renew Chase's settlement offer of $4060.14, again conditioned upon the plaintiff's execution of a new release agreement. (Knepper Aff. ¶ 3.)

The plaintiff has failed to present any evidence demonstrating a causal connection between the protected activity and any of the allegedly adverse actions.  The plaintiff has not offered any direct or circumstantial evidence indicating that Chase took the challenged actions as a result of her engagement in protected activity.  With respect to the actions taken in March 2002 and April 2003, the plaintiff presents no evidence that her 2001 and 2002 filings prompted Chase to deny her workers' compensation benefits and reduce her severance payment. With respect to the actions taken in July 2007, April 2008, June 2008, and December 2008, the plaintiff alleges that these actions were also in retaliation for her 2001 and 2002 filings. Although these actions stem from a prolonged dispute over the same monetary issue from April 2003, they occurred at least five years after the plaintiff engaged in protected activity.  This level of temporal proximity is insufficient to raise an inference of causation.  See Del Pozo v. Bellevue Hosp. Ctr., No. 09 Civ. 4729, 2011 WL 797464, at *7 & n.111 (S.D.N.Y. Mar.

18

3, 2011) (collecting cases and noting that "[c]ourts in this
Circuit have held that periods of two months or more defeat an
inference of causation" (internal quotation marks omitted)).  In
addition, the plaintiff's claim that Chase did not send a
representative with authority to the EEOC mediation session in
retaliation for her 2009 EEOC filing is clearly without merit.
The evidence shows that Chase's representative was authorized to
offer a conditional settlement arrangement that the plaintiff
ultimately rejected.  Because the plaintiff has failed to
present evidence demonstrating a causal connection between the
protected activity and any of the allegedly adverse actions, she
has failed to set forth a prima facie case of retaliation.

     Moreover, Chase has pointed to evidence of legitimate, non-
retaliatory reasons for its actions that the plaintiff has not
refuted.  "An employer has latitude in deciding how to handle
and respond to discrimination claims . . . .  Reasonable
defensive measures do not violate the anti-retaliation provision
of Title VII, even though such steps are adverse to the charging
employee . . . ."  United States v. N.Y.C. Transit Auth., 97
F.3d 672, 677 (2d Cir. 1996).  Here, Chase took most of the
challenged actions in response to the plaintiff's incessant
demands for the allegedly unpaid severance of $3480, and no
rational jury could find that Chase has been unreasonable in its

19

actions over the years.  Chase had already paid the plaintiff
$120,000 pursuant to the 2005 Agreement/Release, under which
Chase believed it had settled all outstanding claims with the
plaintiff.  When the plaintiff sued Mishkin in 2007, Chase was
not even a party to the suit but still offered as part of the
Mishkin settlement a conditional sum of $4060.14--more than the
$3480 the plaintiff had been pursuing in the first place.  It
was entirely reasonable for Chase to condition this settlement
offer on the plaintiff's execution of a new release agreement,
in the hopes of ensuring that she would not sue Chase once more.
Despite Chase's repeated offers of this reasonable settlement
arrangement, the plaintiff chose not to accept its terms.

    In the end, the plaintiff has failed to set forth a prima
facie case of retaliation, let alone show that Chase's proffered
reasons for its actions were pretextual.  The plaintiff has not
presented any evidence indicating that Chase took the challenged
actions for retaliatory reasons, and no rational jury could find
that any of Chase's actions were taken in retaliation against
the plaintiff for engaging in protected activity.  Accordingly,
the defendant's motion for summary judgment dismissing the
plaintiff's claims under Title VII, the ADEA, the ADA, and the
NYSHRL is **granted**.

20

**2.**

A claim under the NYCHRL "requires an independent analysis, as the New York statute, amended by the Local Civil Rights Restoration Act of 2005, was intended to provide a remedy reaching beyond those provided by the counterpart federal civil rights laws." Simmons v. Akin Gump Strauss Hauer & Feld, LLP, No. 11 Civ. 4480, 2013 WL 261537, at *2 (2d Cir. Jan. 24, 2013) (summary order), aff'g No. 10 Civ. 8990, 2011 WL 4634155 (S.D.N.Y. Oct. 6, 2011). "[T]he retaliation inquiry under the [NYCHRL] is 'broader' than its federal counterpart." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) (citing Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 34 (App. Div. 2009)). Under the NYCHRL, retaliation "in any manner" is prohibited, and the retaliation need not necessarily result in "an ultimate action with respect to employment" or in "a materially adverse change in the terms and conditions of employment." N.Y.C. Admin. Code § 8-107(7).

Even applying the NYCHRL standard, however, the plaintiff's retaliation claim under the NYCHRL suffers from the same defects as her retaliation claims under Title VII, the ADEA, the ADA, and the NYSHRL. Simply put, the plaintiff has failed to set forth a prima facie case of retaliation because she failed to present evidence demonstrating a causal connection between the

protected activity and any of the allegedly adverse actions.
Moreover, Chase has proffered legitimate, non-retaliatory
reasons for its actions that the plaintiff has not refuted.  No
rational jury could find that Chase retaliated "in any manner"
against the plaintiff.  Therefore, the defendant's motion for
summary judgment dismissing the plaintiff's claim under the
NYCHRL is also **granted**.


                              **CONCLUSION**

     The Court has considered all of the arguments of the
parties.  To the extent not specifically addressed above, the
remaining arguments are either moot or without merit.  For the
foregoing reasons, the defendant's motion for summary judgment
is **granted** with respect to all of the plaintiff's claims.  The
Clerk is directed to enter judgment dismissing this case.  The
Clerk is also directed to close this case and all pending
motions.

          **SO ORDERED.**

**Dated:    New York, New York**
          **March 7, 2013**              ___/s/_____
                                             **John G. Koeltl**
                                    **United States District Judge**